## THE WERGELAND.

(District Court, W. D. Washington, N. D. September 20, 1919.)

No. 4095.

SHIPPING ☞149—CHARTERER MAY RECOVER FREIGHT EARNED IN VIOLATION OF CHARTER.

Where a schooner, under charter to carry a cargo of lumber which provided, "No goods to be laden on board otherwise than from charterers," after encountering a storm, in which she was compelled to jettison part of the cargo, returned to port of loading for repairs, where charterer tendered cargo to replace that lost, which was refused, but the vessel replaced it with other lumber at a higher freight rate, charterer *held* entitled to recover the excess freight so earned.

In Admiralty. Suit by Comyn Mackall & Co. against the motor schooner Wergeland; A. O. Anderson & Co., claimants. Decree for libelant.

Wm. H. Gorham, of Seattle, Wash., for libelant.

Grosscup & Morrow, of Tacoma, Wash., for respondent and claimants.

NETERER, District Judge. The schooner, under a charter party, loaded a full cargo of lumber for libelant at Port Blakely, Wash., and sailed for Sydney, New South Wales, on March 13, 1918. On the 15th of March, when about 100 miles west of Cape Flattery, the schooner encountered a storm and lost two masts, and approximately 200,000 feet b. m. of her deck cargo was jettisoned, and the schooner was compelled to seek a port of refuge, which proved to be the loading port, at which place a large part of the remaining cargo had to be discharged by reason of the damage sustained by the

vessel. Upon the schooner being repaired, the original cargo was again loaded, with the exception of 5,502 feet b. m., which was broken and destroyed in discharging and reloading. The charterer tendered sufficient cargo to replace the lost cargo at charter rate, but the owners refused to accept, except at an increased rate of freight, which was declined. The owners then shipped on their own account 164,152 feet b. m. of lumber.

The libelant seeks to recover the profit earned on the replacement cargo at the rate of $20.43 per thousand feet b. m.; this being the advance in freight rate at the time of shipment above the charter rate. The charter party contained this provision: "No goods to be laden on board otherwise than from charterers." The libelant contends that it had a right to replace the lost cargo at the charter rate, and further contends that the owner is guilty of a breach of charter party because of the provision stated, and is liable in damages to the market rate of freight as the market stood when the vessel sailed the second time, in excess of the charter rate. The owner contends that the empty space caused by the excepted peril belonged to the vessel, and not to the charterer..

The charterer having shipped a full cargo, including deckload, and the schooner .having sailed on her voyage, and through perils of the sea lost a part of her deck load, the owners, by reason of the exceptions in the charter, were relieved from any liability for nondelivery of that part of the cargo so lost, and the charterers free from any liability for freight thereon. When the schooner sailed, both parties had complied with their respective obligations under the charter party, in delivering and accepting a full cargo; but, through the exigencies of a storm at sea, the vessel was again at the loading port with space for approximately 200,000 feet b. m.

It would appear that, while the policy of the law favors the full use and employment of vessels as a public good, in the absence of any prohibitory clauses in the charter party (1 Parsons, Ship. & Adm. 294), the parties are held, however, to all reasonable stipulations not inconsistent with the charter party, or such policy, where there is no intent or purpose to nullify the policy of the law. Such intent is absent in this case, as shown by the tender of cargo.

The libelant in this case had a right to insist upon the terms of the charter party, and not permit itself to be placed in a position where its cargo might be placed in competition with the cargo of the owner at the port of discharge, and that may have had an important bearing upon the venture of the libelant, and, as stated by the court in The Port Adelaide, 62 Fed. 486, 10 C. C. A. 505:

"Under such a contract the master had no right, without the permission of the libelant, express or implied, to use the vessel upon any part of the voyage for carrying cargo for third persons. Having done so, however, and earned freight thereby, the libelant, if he saw fit to adopt the master's act, became entitled, upon the plainest principles of law, to the freight earned."

In the absence of stipulation, there would be no further duty upon charterers to tender replacement cargo, or on the owners to accept such tender. The space left vacant by the lost cargo would be at the

disposal of the owners, provided that the voyage was not thereby delayed. Weir et al. v. Girvin et al., 8 Aspinall, Maritime Cases, 471; same, on appeal, 9 Aspinall, Maritime Cases, 79.

The damage stipulated, in the event recovery was awarded, is $3,-353.62, in which amount, together with interest, a decree may be entered.